# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION
## CIVIL ACTION NO.:

| | |
|---|---|
| **ANTHONY ROGERS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **VERIFIED COMPLAINT** |
| ) | **(Demand for Jury Trial)** |
| **CANDLE SCIENCE, INC.;** ) | |
| **VIVIAN CUNNINGHAM;** ) | |
| **LYNDSEY GIBSON; and** ) | |
| **MICHAEL SWIMM,** ) | |
| ) | |
| **Defendants.** ) | |

## PRELIMINARY STATEMENT

Plaintiff Anthony Rogers began working for Candle Science, Inc. ("Defendant Candle Science") in October of 2020. Mr. Rogers worked to the satisfaction of his supervisors until he was terminated after reporting pervasive discrimination in the workplace. Defendants Vivian Cunningham, Lyndsey Gibson, and Michael (hereinafter "Mike") Swimm, Mr. Rogers' supervisors, permitted, instigated, and failed to adequately address blatant acts of discrimination against Mr. Rogers and his coworkers until Mr. Rogers was ultimately terminated in retaliation for his repeated reports of racial discrimination, stating that his countenance and manner of speaking were "intimidating." Plaintiff Rogers now asserts claims against Defendants under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and under North Carolina common law protections against Wrongful Discharge in Violation of Public Policy and Negligent Retention and Supervision.

## PARTIES

1. Plaintiff Anthony Rogers is currently a resident of Wake County.

2. Plaintiff was an "employee" of Defendant Candle Science, Inc. within the meaning of the common law and within the meaning of 42 U.S.C. § 2000e(f).

3. At all times relevant to this Complaint, Defendant Candle Science is and was a duly incorporated North Carolina business entity having its principal place of business in Durham County, North Carolina with more than 15 employees.

4. Defendant Vivian Cunningham is a resident of Wake County, North Carolina. At all times relevant to this Complaint, Defendant Cunningham acted as Plaintiff's supervisor.

5. Defendant Lyndsey Gibson is a resident of Durham County, North Carolina. At all times relevant to this Complaint, Defendant Gibson acted as Plaintiff's supervisor.

6. Defendant Michael Swimm is a resident of Orange County, North Carolina. At all times relevant to this complaint, Defendant Swimm acted as Plaintiff's supervisor.

7. The events herein complained of took place principally at Defendants' places of business at 1717 E Lawson St., Durham, NC 27703 and 1247 Person St., Durham, NC 27703.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as certain of Plaintiff's causes of action arise under the laws of the United States.

9. Venue is proper in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b)(1) and (b)(2), inasmuch as the events and/or omissions giving rise to the following claims occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 19, 2021, alleging racial discrimination and retaliation. The EEOC issued a Right to Sue letter on Saturday, April 16, 2022, a copy of which is attached as **Exhibit A**. Plaintiff received notification of the Right to Sue letter on Sunday, April 17, 2022.

## FACTS

11. Plaintiff Anthony Rogers (hereinafter "Mr. Rogers") was hired by Defendant Candle Science in October of 2020 and worked to the satisfaction of his supervisors.

12. Plaintiff did his job well and was commended by his supervisors.

13. Upon his 90-day evaluation, in January of 2021, he was offered a $2,000 raise along with assurances of longevity with the company and the promise of another raise in July of 2022.

14. Mr. Rogers was a valued employee until he began making complaints of discriminatory incidents to his supervisors, beginning in mid-January of 2021.

15. Mr. Rogers worked as a Human Resources ("HR") Assistant, and, in his capacity as an HR Assistant, began receiving numerous reports of blatant racial discrimination.

16. Mr. Rogers is a black male. He believed that his coworkers trusted him with these complaints because he worked in a position which would allow him to take action, or at least bridge an evident gap between them (the non-white employees) and their white supervisors.

17. Mr. Rogers was one of very few people of color who had a position at Candle Science outside of a menial task role. Manual labor positions in the warehouse, specifically in

fulfillment, were ninety percent non-white while Plaintiff worked for Candle Science, whereas most managerial or "white collar" roles were anywhere from seventy to one hundred percent white.

18. Mr. Rogers not only received reports but personally observed racial segregation amongst job duties, discriminatory behaviors toward non-white employees, and racially motivated derogatory language directed toward non-white Candle Science employees.

19. On January 14, 2021, Mr. Rogers received a report from Mr. Marvin Cobb, a black shift lead who has worked for Defendant Candle Science for two years. Mr. Cobb was concerned that the new shift co-lead, Bradley Sanders, a white male whom Mr. Cobb himself had trained, was being given responsibilities that had once belonged to him and that he was being rotated out of his lead position.

20. After multiple requests from Plaintiff to acknowledge Mr. Cobb's concerns, Defendant Lyndsey Gibson, President for Defendant Candle Science, admitted on or about January 27, 2021 that Mr. Cobb had been excluded from previous Candle Science weekly Human Resources meetings and a "Slack" message channel on which he would been included had he not been excluded from managerial duties.

21. Upon information and belief, though his access to managerial functions was restored, Mr. Cobb continued to face discrimination and left his employment with Defendant Candle Science.

22. On or about February 22, 2021, Mr. Rogers was sent an "Employee Relations Tracking" Google spreadsheet. Mr. Rogers was instructed to input any employee complaints into this spreadsheet.

23. This spreadsheet did not originally exist when Mr. Rogers was hired as an HR Assistant. It was created after a white male named Joel, who had been brought in to train as an Operations Manager, complained that there was no company policy on addressing employee concerns.

24. Despite Mr. Rogers presenting multiple complaints to Defendant Cunningham, Human Resources Director for Defendant Candle Science and Plaintiff's direct and only HR supervisor, it was not until Joel, a white male being hired into a managerial position, suggested a system to report complaints, that one was instituted.

25. Defendant Gibson specifically told Mr. Rogers that it was not that she did not believe him when he stated they needed to address the multiple complaints he had received, it was just that she needed to "hear it from somebody else."

26. Joel communicated to Mr. Rogers that he was shocked at the way that other managers spoke to and about employees, including offensive statements about overweight women and black employees, and numerous other reports of racism and discrimination in the Fragrance Room at Candle Science.

27. Joel was shocked that HR did not have any way of tracking reports of discrimination, and upon information and relief, implored Defendants Lyndsey Gibson and Vivian Cunningham to create a more structured method of addressing employee concerns.

28. Defendant Cunningham sent the Employee Relations Tracking Google spreadsheet to Mr. Rogers and tasked him with recording each complaint and how it was resolved.

29. Defendants Cunningham, Gibson, and Swimm were all given access to this Employee Relations Google spreadsheet.

30. On February 23, 2021, Mr. Rogers wrote into the Employee Relations Google spreadsheet that there were concerns about disparate treatment in the Fragrance Room at Candle Science.

31. Multiple employees had reported that non-white workers were micromanaged and written up for minor infractions, white employees were neither verbally chastised nor written up for expressly unprofessional behavior. Mr. Rogers reported this to Defendant Candle Science's HR Director, Defendant Vivian Cunningham, who failed to acknowledge, much less address, these reports.

32. One example of disparate treatment observed by Mr. Rogers pertained to marijuana use by employees.

33. Brennan O'Connor, a white male, was routinely reported as having smoked or sold marijuana on Defendant Candle Science's premises, even going so far as to, on or about March 18, 2021, running over his own foot with a pallet jack while operating it while under the influence.

34. However, when Mr. Rogers reported Mr. O'Connor's drug use to Defendant Cunningham, she put her hands over her ears and said she did not want to know.

35. On or about February 9, 2021, in stark contrast to the way Mr. O'Connor's drug use was intentionally ignored and permitted, Mike O'Connor and Chris Diaz reported Jarrod Isler, a black employee, for "smell[ing] like weed" while at work. Joseph Celeste, a logistics (now referred to as "Inventory Control")[1] manager at the time, forced Mr. Isler to go to LabCorp and take a drug test. Mr. Isler passed and was given no apology.

---

[1] Upon information and belief, Candle Science has since changed the name of their logistics team to "Inventory Control Team."

36. The same logistics manager, Joseph Celeste, was eventually investigated and terminated for exhibiting racism and causing issues with co-workers. However, he was quickly given back his job after arguing to the named Defendants that he needed work because his wife was expecting.

37. Upon Mr. Celeste's return, all three black Candle Science logistics employees quit, as they refused to work with Celeste due to the hostile and discriminatory environment he caused.

38. In March of 2021, Mr. Rogers received a report of an incident where Nicholas Lawrence, a white co-worker, approached Jarrod Isler and Dauquan ("DQ") Boyd, two black employees, and suggested that he should wear blackface so he would fit in on the warehouse floor.

39. Both employees were disturbed by the incident and Lequan McClean (another black employee) reported to Mr. Rogers that Mr. Lawrence very frequently made remarks like this to his black co-workers.

40. Mr. Rogers approached Ms. Cunningham to report the incident, but she asked Mr. Rogers *not* to put it into the Employee Relations spreadsheet. She further said that Mr. Lawrence was just a "joking kid." Ms. Cunningham mentioned a week later that she had spoken to Mr. Lawrence, but he was neither written up, nor was he asked to apologize to his coworkers.

41. Mr. Rogers also consistently observed discriminatory hiring practices while working for Defendant Candle Science. For example, during Mr. Rogers' tenure, only black employees were hired to packing and warehouse floor positions, while white employees

were selected for higher ranking positions, often when they did not meet the minimal education or experience requirements.

42. As one example, Jeremy Hart, a black male, originally worked as a warehouse associate for Defendant Candle Science. When Mr. Hart heard that there was a marketing position open within the company, he jumped at the chance to apply, as he had studied marketing at North Carolina Agricultural and Technical State University. Upon information and belief, the position was instead given to a white female.

43. Though Mr. Hart was a trusted employee and had a background in marketing, Zeb Watson, then Operations Manager, stated that Mr. Hart wasn't right for the job because he "looked sleepy" while at work.

44. On or about May 20, 2021, Mr. Rogers received a report that white supervisors, June Steinhauer and Dashiel "Dash" Krick, were following black employees into bathrooms to "monitor" their bathroom breaks at the direction of production supervisor Greg Gubish.

45. Mr. Rogers immediately brought this grossly inappropriate and racially motivated policy to Defendant Cunningham. However, Defendant Cunningham refused to investigate or act to stop the harassment and became increasingly hostile to Mr. Rogers.

46. When Mr. Rogers attempted to investigate and document these incidents, Defendant Cunningham prevented him by restricting his access to the security camera footage.

47. On or about Saturday, May 23, 2021, Mr. Rogers observed logistics supervisor David Hancock, a white male, standing on the forklift scissors to place a box of supplies on a warehouse shelf. He lost his footing and Defendant Candle Science's in house counsel, Whitfield Gibson ran over to assist him so he wouldn't hurt himself.

8

48. Mr. Rogers was shocked, not only because of the risk Mr. Hancock was posing to himself and others, but Mr. Rogers knew that had any of the black staff members done this, they would have been fired immediately.

49. As Mr. Gibson helped Mr. Hancock regain his balance, Mr. Rogers cleared his throat and attempted to gain the attention of other supervisors so he would not have to be the one to say anything. When he did so, David Hancock yelled "Fuckin' OSHA isn't here!"

50. Mr. Rogers mentioned the incident on Monday, May 25, 2021 to Defendant Cunningham and immediately regretted his decision. Defendant Cunningham ignored Mr. Rogers' comment, pretending not to hear him, but he could tell by her countenance that this would come back to haunt him.

51. Mr. Rogers knew that he had made a grave misstep. He, a black male, was questioning yet another white male in a high-ranking position, and implying that he needed to be reprimanded.

52. Though he continued to document reports of discrimination, Mr. Rogers began to fear reporting discriminatory incidents to his supervisors due to their increasing hostility toward him into response to his reporting.

53. Mr. Rogers' varied reports reflected his concern, but these reports either went unacknowledged or were met with indifference or explicit efforts to keep these incidents quiet. Mr. Rogers understood that the managerial staff for Defendant Candle Science had no desire to remedy these situations, and saw him as problematic for reporting the issues he observed.

54. On or about June 4, 2021 Mr. Rogers was escorted by Defendant Mike Swimm into a room with Defendants Cunningham and Gibson.

55. Mr. Rogers was told that his countenance was "intimidating" and made Defendants Swimm, Cunningham and Gibson "uncomfortable." Defendant Cunningham stated that she had been intimidated by Mr. Rogers on multiple occasions and that "the way he looked" made her uncomfortable.

56. Defendant Swimm also jumped in and said that he had felt intimidated by Mr. Rogers before as well. Ms. Gibson then chimed in and said that she had "seen that look before." They further stated that his manner of speaking was "unpleasant" and they didn't like his tone of voice.

57. Without stating specific performance issues, they told Mr. Rogers he was being terminated immediately for how he looked and spoke.

58. All Mr. Rogers could think of in that moment were the many black men who had been labeled as a threat, especially those in the news who had lost their lives for it. Afraid to do anything else, Mr. Rogers looked at the floor and remained quiet for fear that the Defendants might accuse him of something worse.

59. Mr. Rogers was shocked and hurt by their words. He anticipated that his reports may jeopardize his job, but he didn't expect for the Candle Science's owner, president, and his supervisor to accuse him of being a threat to them. He was terrified of being labeled as an "angry black man" or accused of violence. Left with no other option, Mr. Rogers went to his office and began to pack his things.

60. As he left, Defendant Cunningham followed Mr. Rogers to his car, watching him and oddly grinning as he left the parking lot.

61. Mr. Rogers set out to assist the many employees who experienced blatant racial discrimination. He believed that his supervisors would address the situations but found

10

Case 1:22-cv-00559-CCE-LPA   Document 1   Filed 07/16/22   Page 10 of 18

that they intentionally and overtly ignored and permitted discriminatory policies and actions by the various managers and supervisors who created a hostile environment for people of color at Candle Science, Inc.

62. After many failed attempts to encourage the company to address these problems, and after making multiple specific reports of racial discrimination, Mr. Rogers was subjected to racial discrimination firsthand by the named Defendants and was ultimately terminated.

63. As a result of his termination, Mr. Rogers has been humiliated, and dealt with substantial anxiety and stress from working in an environment where he, and his coworkers, were so blatantly discriminated against.

## FIRST CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF 42 U.S.C. §2000e
### (All Defendants)

64. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this Complaint.

65. Plaintiff belonged to a protected class.

66. Plaintiff was qualified for his position and performed his job duties at a level that met Defendant Candle Science's legitimate expectations.

67. Plaintiff complained of racial discrimination to his supervisors.

68. Plaintiff's complaints were based on objectively reasonable belief that multiple of Defendants' managerial staffs' comments, actions, practices, and policies constituted intentional racial discrimination.

69. In response to Plaintiff's complaints of consistent racial discrimination, Plaintiff was terminated from his position as Human Resources Assistant at Defendant Candle Science, Inc.

70. Defendants intended to, and did, illegally retaliate against Plaintiff in reaction to his complaints of discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

71. As a direct and proximate result of Defendants' illegal retaliation, Plaintiff has suffered lost wages and endured severe emotional distress.

**SECOND CLAIM FOR RELIEF:**
**DISCRIMINATION/HARASSMENT IN VIOLATION OF 42 U.S.C. §2000e**
**(All Defendants)**

72. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

73. Plaintiff belonged to a protected class.

74. While employed at Defendant Candle Science, Inc., Plaintiff was subjected to racially motivated harassment.

75. Plaintiff's race was a motivating factor in terminating his employment.

76. Defendants cited racially motivated stereotypes as a basis for Plaintiff's dismissal.

77. Defendants intended to, and did, illegally discriminate against Plaintiff in reaction to his complaints of discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

78. As a direct and proximate result of the illegal discrimination outlined above, Plaintiff suffered lost wages and endured severe emotional distress.

## THIRD CLAIM FOR RELIEF:
## RACIAL DISCRIMINATION UNDER 42 U.S.C. §1981
## (All Defendants)

79. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

80. Defendants discriminated against Plaintiff by terminating his employment on the basis of his race.

81. Defendants cited racially motivated stereotypes as a basis for Plaintiff's dismissal.

82. Defendants infringed upon Plaintiff's rights secured by 42 U.S.C. §1981 by citing racially motivated stereotypes as a basis of Plaintiff's dismissal.

83. All Defendants intended to, and did, infringe upon Plaintiff's rights secured by 42 U.S.C. §1981.

84. As a direct and proximate result of the illegal discrimination outlined above, Plaintiff suffered lost wages and endured severe emotional distress.

## FOURTH CLAIM FOR RELIEF:
## RETALIATION UNDER 42 U.S.C. § 1981
## (All Defendants)

85. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

86. Defendant Candle Science, Inc. intentionally terminated Plaintiff because he complained of racial discrimination.

87. Plaintiff's complaint on May 20, 2021 (as well as all prior complaints) was based on objectively reasonable belief that actions on behalf of June Steinhauer and Dashiel "Dash" Krick at the direction of Gabe Gubish constituted an intentional discriminatory act.

88. Plaintiff was terminated two weeks after making complaints to Defendant Cunningham concerning clear discriminatory and harassing behavior.

89. All Defendants failed to protect Plaintiff's right to be free from discrimination and participated in retaliatory efforts against Plaintiff which culminated in his termination.

90. As a direct and proximate result of Defendants' illegal retaliation, Plaintiff has suffered lost wages and endured severe emotional distress.

**FIFTH CLAIM FOR RELIEF:**
**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY -**
**DISCRIMINATION**
**(All Defendants)**

91. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

92. The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.1-3, is "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employee 15 or more employees."

93. Defendants violated the above-stated public policy by citing racially motivated stereotypes as a basis for Plaintiff's termination.

94. Defendants' actions as herein described were malicious and willful and in wanton disregard of Plaintiff's rights.

95. Plaintiff is entitled to recover punitive damages from Defendants in accordance with law, as may be determined by trier of fact.

## SIXTH CLAIM FOR RELIEF:
## NEGLIGENT RETENTION AND SUPERVISION
### (All Defendants)

96. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

97. Defendants had a duty to prevent, address, and stop all acts of discrimination and discriminatory policies at their company.

98. Plaintiff made reports of discriminatory acts and behaviors against multiple of Defendant Candle Science employees.

99. Defendants knew or should have known about the unlawful discriminatory language and actions of Nicholas Lawrence, June Steinhauer, Dashiel "Dash" Krick, and Greg Gubish, yet Defendants failed to take reasonable precautions to prevent this harmful conduct.

100. Defendants failed to take adequate measures to address and precautions to prevent the wrongful acts herein described, all named Defendants breached their duty to Plaintiff, among others.

101. As a result of Defendants' negligence, Plaintiff has been damaged in an amount to be determined at trial.

102. Plaintiff is entitled to recover from Defendants compensatory damages, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney's fees.

### *RESPONDEAT SUPERIOR*

103. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

104. The actions of Defendants Cunningham, Gibson, and Swimm, as described herein, were acts performed by employees and agents of Defendant Candle Science, Inc.

105. The acts of the above-named employees took place during the hours those employees or agents worked for Defendant Candle Science, Inc.

106. These acts were related to, or committed in the context of, the conduct these employees or agents were hired to perform.

107. The wrongful actions herein complained of were performed by agents of Defendant Candle Science, Inc., in the normal course of business. Defendant Candle Science, Inc. is thus liable for their agents' actions under the doctrine of *respondeat superior*.

108. As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial.

109. Plaintiff is entitled to recover from Defendants compensatory damages plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney's fees.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF PRAYS:

a) That judgment be entered against Defendants, jointly and severally, in favor of Plaintiff in amount to be determined at trial;

b) That Plaintiff recover of Defendants in excess of $75,000 as compensatory damages;

16

c) That Plaintiff recover of Defendants punitive damages in an amount calculated to punish Defendants and deter similar future conduct;

d) That Plaintiff be granted trial by jury;

e) That Plaintiff recover of the Defendants reasonable costs and expenses, including attorney fees, in bringing this action;

f) For such other and further relief as to the Court deems just and proper.

This the 16th day of July, 2022.

**FORGE LAW GROUP**
*Attorneys for Plaintiff*

/s/Erin K. T. Berry
Erin K. T. Berry
State Bar No. 57606
3400 Croasdaile Dr. Suite 300
Durham, North Carolina 27705
erin.berry@forgelawgroup.com
Telephone: 828.448.8478

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
CIVIL ACTION NO.:

| ANTHONY ROGERS | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) |
| | ) VERIFICATION |
| CANDLE SCIENCE, INC., | ) |
| VIVIAN CUNNINGHAM, | ) |
| LYNDSEY GIBSON, | ) |
| MIKE SWIMM, | ) |
| Defendants. | ) |

STATE OF NORTH CAROLINA
COUNTY OF Durham

Anthony Rogers, being first duly sworn, deposes and says: That he is a Plaintiff in the above-entitled action; that he has read the foregoing Verified Complaint and knows the contents therein; that the same are true of his actual knowledge, except as to those matters and things stated and alleged upon information and believe, and as to those matters and things, he believes the same to be true.

_____ (SEAL)

STATE OF NORTH CAROLINA
COUNTY OF Durham

Sworn to (or affirmed) and subscribed before me this day by Anthony Rogers.

Date: 7/16/2022

[OFFICIAL SEAL]

(Signature of Notary)

Dawn T. Snead  Notary Public
(Type or Print Name of Notary)

My commission expires: 04.02.2026

18